Spraker *v.* Van Alstyne.

beck to New York, had it been delivered before the navigation closed. [199] Without these facts, it is impossible for any person to infer that the injury to the defendant was more than the value of the hay delivered.

If the question had come before the supreme court on this special verdict, and the defendant was right in his first point as well as the second, the judgment should as now have been in his favor, notwithstanding the defective finding of the facts as to the last point. But if he was wrong as to the first point and right as to the last, then a *venire de novo* should have been awarded; and if that court had given *judgment* for either party erroneously, instead of awarding a *venire de novo*, this court, upon a writ of error, would have corrected the proceeding, and would have given such judgment as the court below ought to have given. But as the question upon the defective finding has never been before the supreme court for its decision, we cannot reverse the judgment on that account.

---

## DANIEL SPRAKER, *vs.* NICHOLAS VAN ALSTYNE, &c. (a)

Where a testator devised lands to two of his sons *without words of perpetuity*, but *directed them to pay all his debts*, disposed of *all his household goods* and *movable effects* to his wife, and *created no estate in remainder*, as to the property devised to his sons, and where, from the tenor of the whole instrument, it was manifest, that the testator intended to dispose of the whole estate ; *it was held*, that the *charge* upon the sons was personal, and that, by necessary implication, they took a *fee* in the premises devised to them, although, in other devises in the same will, words of perpetuity were used.

If it is manifestly the intention of the testator, that the devisee shall pay debts or other charges, in respect to the land devised to him, and not merely that he shall pay such debts or charges *out of the income or profits of the land devised*, the charge is *personal* upon the devisee, and he takes *a fee by implication*, although the devise be without words of perpetuity.

Personal property, specifically bequeathed, and not as a mere *residuum*, is not the *primary fund* for the payment of debts, if by the same will, *lands* are given to the sons of the testator, who are *directed to pay his debts*; to exonerate the personal property in such case, it is not necessary that there should be express words of exoneration

ERROR from the supreme court. Nicholas Van Alstyne and his wife Cornelia brought an action of ejectment against Daniel Spraker, for the recovery of an undivided share of certain lands, situate in the county of Montgomery, which they claimed in right of the said *Cornelia* as one of the heirs at law of her father, *Cornelius M. Van Alstyne.* The defendant claimed the premises in question, under title derived from *Martin Van Alstyne*, as a *devisee* under the will of Cornelius M. Van Alstyne, who, on the 12th July, 1787, made his last

---

(a) S. C. 13 Wend. 582.

Spraker v. Van Alstyne.

will and testament. By this will, the testator gave to his wife all his *household goods and movable effects* whatsoever, and directed that she should be maintained out of his estate during her lifetime. Next, after giving to his eldest son Martin, by reason of his primogeniture, thirty shillings, he [201] *directed that all his just debts should be paid by his two sons, Martin and Cornelius.* He then gave to his son *Daniel,* and to *his heirs and assigns forever,* certain real estate, charging him with the support of a relative, and directing the payment of certain legacies, and also the payment of a certain bond due to one Cornelius Tymeson. Then followed a devise in these words : " Item—I give and devise unto my son *Martin Van Alstyne* that place or lot of low lands lying," &c., particularly describing certain premises. Next, a similar devise of other lands to his son Cornelius ; and then he devised to his daughter *Cornelia* and *to her heirs forever,* a lot of land of 66 acres, charging her with the payment of two legacies of £50 to each of his two sons Martin and Cornelius ; and lastly, he appointed his friend Rynier Van Everen and his two sons, Martin and Cornelius, *executors* and *overseers* of his will. The testator, after making his will, executed a bond to one C. Van Schelluyne, conditioned for the payment of £231, and made a sealed note for about £16 to one D. Cornere; which debts, together with another of $70 owing to one J. Lewis, were unpaid at the time of the death of the testator, and were subsequently *paid by his sons, Martin and Cornelius.* The testator died in 1791 or 1792, leaving his son Martin living, who survived him until 1799, when he also died. Upon these facts, a verdict was entered for the plaintiffs, subject to the opinion of the supreme court, upon the question whether Martin, by the will of the testator, took a *fee* or only a *life estate* in the premises in question. A case was accordingly made up, presenting the above facts, on which, after argument, the supreme court rendered judgment in favor of the *plaintiffs.* (See opinion delivered in supreme court, 13 *Wendell,* 582, *et seq.*) The case was turned into a *special verdict,* and the defendant sued out a writ of error.

The cause was argued in this court by

*S. Beardsley* (attorney-general) and *M. T. Reynolds,* for the plaintiff in error.

*D. Cady & S. Stevens,* for the defendants in error.          [202]

*Points insisted on by the counsel for plaintiff in error :*

I. By the will, and the acceptance of the estate, the sons, Martin and Cornelius, were *personally* charged with the payment of the debts of the testator ; and the *charge* of payment of the *debts* of the testator, upon the persons of Martin and Cornelius, *was in respect of the lands* devised to them, whereby the fee passed by *necessary implication.* (18 *Johns R.* 31; 10 *id.* 148; 6 *id.* 185, 191 ; 3 *T. R.* 356 ; 8 *id.* 497 ; *Collier's case,* 6 *Co.* 16 ; 17 *Johns. R.* 221; 3 *Burr.* 1623 ; *Cowp.* 841 ; 6 *Cruise,* 276; 2 *R. S.* 57, § 5 ; 1 *id.* 748, § 1, 2.)

II. It is manifest from the long lapse of time since the death of *Martin* Van Alstyne, being about 35 years before the suit was commenced, that the plaintiffs, who resided within sight of the premises in question, considered them to belong to *Martin in fee.*

III. That this was the understanding, is farther evident from the acquiescence of the plaintiffs and their delay in bringing suit; in consequence of which, they would lose all the mesne profits, except for the last six years. (12 *Wendell,* 83 ; 8 *Cowen,* 56.)

IV. Martin and Cornelius, *as executors,* were not bound to pay the testator's debts farther than they might have assets, and it does not appear they had any assets ; nor were they the only executors.

V. The use of the word "heirs" in some parts of the will, is no evidence in this case of the professional skill, or accuracy of the scrivener who drew the will, inasmuch as the contrary appears in other parts of the will.

VI. There is in this case *no express limitation* of an estate *for life only*

Spraker v. Van Alstyne.

and, on the contrary, that the testator intended by the will to give a fee *to Martin* and *to Cornelius,* is manifest from all the provisions in the will, as well as the declarations of the testator shortly before his death; and from the acts of the devisees, from time to time—such as giving deeds with warranty of title, &c.

[203]          *Points for the defendants in error :*

I. The devise of the premises in question to Martin Van Alstyne, contains no " apt words of limitation," nor does it charge the estate devised with the payment of debts, nor impose any charge upon the person of the devisee in respect to the estate devised. The devisee therefore took only an estate for life.

Whenever the devise is so worded, that the intent of the testator is apparent that the devisee shall *pay* for the land, or that the burthen is thrown on the devisee in respect of the land; or if the land is by the will charged with the payment of debts, then the devisee takes a fee.

" As if a man devise 20 acres to another, and that he pay to his executor for the same, ten pounds, the devisee takes a fee. This shows that the devisee is to pay *for* the land, and this principle is the foundation of all the cases on the subject." (1 *Coke's Institutes,* § 1, 9, 11.)

In *Freak* v. *Lee,* (2 *Showers,* 38,) legacies were charged on the land, and then the land was devised, and the court held that the devisee took a fee. The legatee could compel a sale of the land for the payment of the legacy.

A devise, if charged with the payment of debts and legacies, will pass a fee. (*Ackland* v. *Ackland,* 2 *Vern.* 687.)

" It is not sufficient that debts and legacies are directed to be paid, that alone does not create the charge; but they must be directed to be *first* or *previously* paid, or the devise declared to be after they are paid." (*Lupton* v. *Lupton,* 2 *Johns. C. R.* 624.)

The case of *Johnson* v. *Embler,* (14 *Johns. R.* 199,) shows that there must be words of perpetuity in a will, or something by which a fee by implication may be inferred, or the devisee takes only an estate for life.

The case of *Jackson* v. *Bull,* (10 *Johns. R.* 148,) shows that to give an estate in fee by implication, the devise must be such as will make the devisee *personally* liable to pay the money directed to be paid, in case he accepts the devise. In the case of *Doe* v. *Richards,* (3 *Term R.* 359,) Ashurst, J., held, that accord-

[204] ing to the words of the devise in that case, all legatees *might* call on the devisee for their demands.

In the case of *Jackson* v. *Murrell,* (6 *Johns. R.* 192,) a direction that the devisee should *pay out* of the fast estate certain legacies, was held to pass a fee.

In the case of *Jackson* v. *Harris,* (8 *Johns. R.* 142,) the testator directed certain legacies to be raised and levied out of his estate, (*page* 146.) It was held that the words did not pass a fee. The charge was on the testator's estate generally, and it was contingent whether the devisee ever would be chargeable with the payment of the legacies. In the following cases the devisees were conditional: *Collier's case,* (6 *Co.* 16.;) *Jackson* v. *Martin,* (18 *Johns. R.* 31;) *Doe* v. *Holmes,* (8 *Term R.* 1;) *Goodtitle* v. *Madden,* (4 *East,* 496.)

II. The direction in the will, that all the testator's debts shall be paid by his two sons Martin and Cornelius, not being connected with any devise to them jointly or severally, can have no influence on such devises, and if such direction is to have any influence, it must be confined to the land devised to both of them. The devise to Martin alone cannot be supposed to have been made in respect to the directions that he and Cornelius should pay the debts.

III. The direction in the will that " Martin and Cornelius shall pay the testator's debts," gives the creditors of the testator no claim on Martin and Cornelius.

After advisement, the following opinions were delivered:

*By the* CHANCELLOR. The right of the defendants in error to recover the property in controversy in this suit, depends upon the question whether Martin Van Alstyne, under whom the plaintiff in error derived his title, took a *fee* or

Spraker *v.* Van Alstyne.

a mere *estate for life* under the will of his father, who died in 1791.   If it were not for a technical rule of law which the legislature has very wisely abolished in the recent revision of the statutes of this state, and which it is admitted defeated the actual intention of the testator in nearly every case to which it was applied, this question never could have arisen.   No one who reads this will, can for a moment doubt that it was the actual intention of the *testator* to give a *fee* to his sons Martin and Cornelius in the lands devised to them, in the same manner as he had given the fee to his two other children [205] in the lands devised to them respectively.   It remains to be seen whether there is any thing to take this case out of the technical rule, upon the principles which have heretofore governed courts of justice in similar cases.

It is not denied that the case is taken out of this technical rule, if the court can be satisfied it was the intention of the testator to charge the devisee *personally* with the payment of any debt or legacy in respect to the land devised: such was the decision of the supreme court in the case of *Jackson, ex dem. Ruggles,* v. *Martin,* (18 *Johns. R.* 31 ;) and that has been the settled law in England on this subject for a century and a half.   The rule is that where there is a mere charge upon the estate devised, but not upon the devisee personally, he takes a life estate only, by a general devise of the land, without words of limitation to his heirs ; but where the charge is upon the person of the devisee in respect to the lands devised, he takes a fee by implication ; whether the charge be upon the lands also, or only upon him personally.   (*Jackson* v. *Bull,* 10 *Johns. R.* 148.)   In the case last referred to, the devisees were held not to take a fee, because the legacies were directed to be paid by the *executors* out of the testator's money and movables, and the debts were not charged upon the persons of the devisees, but upon the testator's real estate generally.

The meaning of the expression, " a charge upon the person in respect to the lands devised," is that the devisee is directed to pay the debts or legacies personally, or to relinquish some other right, for the reason or because the testator has made the devise to him ; so that if the devisee accept the devise, he impliedly assumes to pay the charge, or submit to the loss.   The principle of the rule is this, that as the intention of the testator is to govern in the construction of the will, the court will take the case out of the technical rule which requires words of perpetuity, and give to the devisee a fee where there is any thing to show that the testator must have intended to convey something more than a mere life estate ; and as the testator must have intended a benefit to the devisee, according to legal presumption, if he has imposed a personal [206] charge upon the devisee in respect to, or because he has devised the estate to him, the law will not presume he meant the devisee should take a mere life estate, which might terminate immediately after such devisee had paid the debt, legacy, or other burthen, and before he could have been remunerated out of the estate devised.   Where it is evident, therefore, that the testator intended the devisee should pay the debts or other charge because he had received the devise of the lands, and not merely out of the income or profits of the land, he takes the fee by implication without words of perpetuity.   Thus, in *Bryan* v. *Lady Baldwin,* (1 *Anders. R.* 35,) which is one of the earliest cases on this subject, where the testator owed £100 to the devisee, and devised lands to him without words of perpetuity, in consideration that he would release the debt to the executors, it was held that the devisee took the fee and not a mere life estate, on releasing the debt.   So in the case of *Collier* v. *Walker,* (6 *Coke's R.* 16, [*a*,]) where a remainder was devised to the devisee, without any words of perpetuity, *he paying* to one twenty shillings, and to others small sums, amounting to 45 shillings in all, the devisee was held to take a fee.   See also the case of *Goodtitle* v. *Madden,* (4 *East's R.* 496,) where it was held that a devise to the testator's widow, without words of perpetuity, " so that she should in good time pay all lawful debts which should appear," it was held that she took a fee ; although

Spraker *v.* Van Alstyne.

she was the executrix, and the devise was accompanied also by the bequest of the testator's personal estate. Indeed, there never has been a doubt, that where it was evident the testator intended that if the devisee took the estate, he should be personally responsible for the payment of the debts, legacies, or other charges, and not merely that he should pay them after he had received enough out of the estate itself to pay them, that he took a fee by implication, although the word heirs, or other words of perpetuity, were not used in the devise. (*Lindsay* v. *McCormick,* 2 *A. K. Marsh. R.* 232. *Coke Litt.* 9, *b.* *Cowp* 841. 1 *Rolle's Abr.* 834. 2 *Show.* 38.)

In this case I think there can be no doubt that the testator intended that [207] his sons, Martin and Cornelius, should pay the debts, except the one which he directed to be paid by *Daniel ;* and he intended this because, or for the reason that he had, among other things, devised the lands in question to Martin, and other lands to Cornelius. The chief justice supposed that he did not mean they should pay the debts, because there might have been personal estate to pay them. If that is the construction of the will, then the personal property devised to the widow must have been first sold for that purpose, and if that was not sufficient, the lands devised to Daniel and the sister, would have been bound to contribute equally with the land devised to Martin and Cornelius. Now is it possible to suppose that such could have been the intention of this testator ? What debts he owed at the time of making his will does not appear ; but it appears that some of the debts then due, remained outstanding at the time of his death, four years afterwards. Neither is it at all material what debts were then owing, as it was the debts which should be due at his death, that the testator was to provide for by his will, whether contracted before or after the date of such will. In the first place, for the purpose of providing for his wife, if she should survive him, the testator gives her all *his household goods and movable effects whatsoever,* and directs that she should be maintained out of his estate. He then gives to Martin, his oldest son, 30 shillings, by reason of his primogeniture, and declares *he shall be contented with what is thereafter given him in the will.* As the will appears to have been drawn a very short time after the act changing the course of descent, and evidently by one who was not a lawyer, it is most probable the testator still supposed the eldest son was the heir at law. But whether he was aware of that fact or not, as he declared that one of his heirs should be content with what was given to him in the will, and as he made no devise of any reversionary interests in any of his lands, it is evident he supposed he was devising all his real estate. This circumstance alone has, in one of our sister states, been held sufficient to show the intention of the testator to convey a fee in lands devised without words of perpetuity. (*Butler* v. *Little,* 3 *Greenl. R.* 239.) And I have no doubt [208] we ought to give it the same effect here, even if there was nothing else to show the intention of the testator to convey a fee to Martin and Cornelius, so as to take the case out of the technical rule, as the intention to give a fee, in the lands devised to each child, is more clearly manifested from that circumstance than from a mere charge upon the person of a devisee. The testator proceeds, however, and in terms directs that all his just debts shall be paid by his two sons Martin and Cornelius, without giving them any estate or fund whatever out of which to pay the same, unless he intended they should take the same from his *movables,* which he had expressly bequeathed to his widow, and that they should also take such personal estate or movables out of the hands of Van Everen, who, by a subsequent clause of the will, he appoints one of his executors.

Whether the bequest of all the testator's *movable effects whatsoever* in addition to all his household goods, did not *ex vi termini* convey to her all his choses in action, if he had any, as well as tangible property, it is not necessary to decide here. I should have very little doubt on this subject, if I was sure the will was in the language of the Dutch testator, and not drawn, as was suggested, by a Yankee school-master ; for in the civil law, which the Dutch settlers brought

Spraker v. Van Alstyne.

with them from Holland, immovable and movable property are the appropriate terms to distinguish between real and personal estate. The Dutch inhabitants of this state, were so much in the habit of using these civil law terms in their wills, &c., that it was deemed necessary at an early day to pass a statute on the subject, and it was accordingly declared by the act of October, 1710, that the words *onroerende and vast staat*, translated in English *immovable* and *fast estate*, should, in Dutch wills, deeds, and antenuptial contracts, be construed to mean land or real estate. At any rate, the testator in this case intended to bequeath to the wife all his household goods and movable effects, such as clothing. farming utensils, cattle, horses, &c., as a specific bequest, and not as a mere residue; and having devised to his three sons certain portions of his real estate, and directed them to pay all his debts, such goods and movable effects, upon a rational construction of the will and the manifest in- [209] tent of the testator, were not the primary fund for the payment of those debts. To exonerate personal estate bequeathed specifically, and not as a mere residue, it is not necessary that express words of exoneration should be used; it is sufficient if it appear from the whole will taken together, that such was the manifest intention of the testator. The cases of *Green* v. *Green* (4 *Mad. R.* 148,) and *Mitchell* v. *Mitchell*, (5 *id.* 72,) warrant me in the conclusion that such was the manifest intention of the testator here; and that the widow had a right to insist that the bond to Tymeson should be paid by Daniel, and the other debts by Martin and Cornelius, so as to exonerate the property bequeathed to her from that burthen. If they had refused to pay such debts, a court of chancery would have compelled them to do so, after they had accepted of the devises to them respectively, and if necessary would have ordered the estate in their hands to be sold for that purpose. Whether they could have been sued for those debts in a court of law, without an express promise to pay, it is not necessary to consider here.

Upon the whole, I am fully satisfied in this case that the late chief justice, in the multiplicity of his arduous duties, overlooked the true principles upon which the decision of this cause depended; and that from the terms of this will it is manifest upon the principles which have governed previous cases, that the testator intended to give to his sons, Martin and Cornelius, a *fee simple* in the lands devised to them respectively. For these reasons, I shall vote to reverse the judgment of the supreme court.

By Senator DICKINSON. The only question presented by this case is, whether Martin, son of the testator, by and under the will, took an estate in the premises in question in *fee*, or a *life estate* merely.

The cases are not entirely uniform as to the language which will pass a fee, but as there are no words of perpetuity employed in this devise, it is clear that Martin took only a life estate unless he was charged with the payment of the debts in 'respect of the land," or in other words, because the land was devised to [210] him. The rule is conceded to be, that whenever the devise is so worded that the intent of the testator is apparent, that the devisee shall pay for the land, or that the burthen is thrown on him *in respect of the land*; or if he is *personally* charged with the payment of the debts, then he takes a fee. It is the duty of courts, in the construction of written instruments relating to an estate or interest in lands, to carry into effect the intent of the parties, so far as such intent can be collected from the *whole* instrument, and is consistent with the rules of law. (1 *R. S.* 740, § 2.) In looking at this will as a whole, I apprehend the intent of the testator is easily ascertained, although some of its particular provisions are somewhat obscure and conflicting. It was drawn and executed at an early day, and bears evidence of anything but professional skill. Technical words of perpetuity and limitation are employed without regard to their meaning, and *personal estate* is given to the "*heirs and assigns*" of the donee "*forever*;" while no express terms are used in some instances indicating his intention as to the estate he devised in his real property. This, together with the fact that the testator and two of the

Spraker v. Van Alstyne.

subscribing witnesses were too illiterate to write their names, will perhaps justify the conclusion that the particular language of the will was not at the time so far the subject of criticism as to be understood in its legal effect or bearing.

The testator, after giving all his household goods and movable effects whatsoever to his wife and to her " *heirs and assigns forever*," and providing that she shall be maintained out of his estate during her natural life, gives Martin, by reason of his primogeniture, thirty shillings New York currency, with which he very prudently provides he shall be content, together with what he shall thereafter give him in his will.    He then proceeds as follows : " Item. *I will that all my just debts shall be paid by my two sons, Martin C. Van Alstyne and Cornelius."*  He next proceeds to dispose of the residue of his estate, real and personal, including an *estate in remainder* in his *wearing apparel*, after the death of his wife, notwithstanding the disposition of it to her " *heirs* [211] *and assigns forever ;*" and constitutes his two sons, Martin and Cornelius, and his friend Rynier Van Everen, executors and *overseers* of his last will and testament.   In looking over the whole instrument, and endeavoring to collect the real intentions of the testator, I have no doubt that he intended to dispose of his entire property, although he did not employ appropriate and technical language for that purpose.   The will is clothed with various special and minute provisions : the support of his wife, the discharge of a bond, the payment of legacies to his grand-daughters, &c. ; and even the disposition of his wearing apparel, is made the subject of special provision.   Is it then reasonable to suppose that the testator seriously intended to leave the lands devised to Martin undisposed of except for the term of a single life.

The rule of law which perverts the plain and obvious meaning of language in a devise, affixing one meaning to the term " *land*," and another to " *real estate,*" deserves not to be extended by implication.   By dint of authority it may enforce obedience, but it has then discharged its office, and should not be used to give unnatural color to other portions of the instrument.   It originated in groping after words rather than ideas, and is upheld by a devotion to authority, and not because it is founded in reason or common sense.    Independent of this arbitrary rule, I should feel bound to declare that Martin took a fee under the language of the devise ; and although this rule may declare the legal effect of the language of the testator, it will scarcely serve to pervert or control the human understanding.   The decisions have declared that a devise without words of perpetuity, shall not of itself convey a fee ; but they have not yet, and it is to be hoped they will not soon go so far as to say that the absence of words of perpetuity are evidence of the testator's intention to devise a life estate merely, for the intention of the testator is to be collected from the whole instrument.   When lands are devised without words of perpetuity, a fee simple will pass, provided it appears from the whole will taken together that such was the intention of the testator.   (1 *Munf.* 549.   11 *Mass. R.* 528.   8 *id.* 3.   6 *Binney*, 94.)

[212]    The main question, however, is, were Martin and Cornelius charged with the payment of the debts of the testator, *personally or in respect of the land?*   The testator devised lands to Martin and Cornelius and the premises in question to Martin, and charged Martin and Cornelius with the payment of all his just debts ; which they paid accordingly.    But it is said that the debts were charged upon them and paid by them, in their representative character.    This is a forced, rather than a natural construction of the will.    The testator gave them the land, and charged them with the payment of his debts.    This, in the absence of explanation, must be held to be a personal charge. As they were executors, it was their duty as such to pay the debts ; nor was it necessary to make it the subject of testamentary declaration that they should do so.   Besides, if it had been intended to direct them to pay the debts in that character, why was their co-executor, Van Everen, omitted?   The testator clearly intended to charge them personally with the payment of all his just debts, except

such as were otherwise specially provided for, by reason of the devise to them. Again: it is said that the charge of debts upon Martin and Cornelius *jointly*, could only carry a fee in land devised to them both. This position is decidedly technical, and savors of form rather than substance. Having accepted the devise, they were charged with the payment of the debts; and had they not paid them voluntarily, as it seems they did, they might have been coerced by prosecution. Whether they were charged jointly or severally, is a matter of little consequence. In short, from a careful examination of the authorities, so elaborately reviewed by the respected late chief justice, and applying the principles laid down by him to the language of the testator, with the liberality which I believe the case demands, I have no doubt that the testator charged his sons, Martin and Cornelius, with the payment of his debts, in respect of the land, and that the demise of the premises in question to Martin comes substantially within this provision.

The acquiescence of the defendants in error in this construction for thirty-five years, ought to operate strongly against them. They probably [213] had personal knowledge of the real intentions of the testator; if not, they have given their judgment upon it, by suffering their claim to sleep near half a century before they attempt to enforce it.

I am therefore of opinion that Martin Van Alstyne took a fee in the premises in question, under the will of the testator, and that the judgment of the supreme court ought to be reversed.

Upon the question being put, *Shall this judgment be reversed?* all the members of the court (21 being present) voted in the affirmative. Whereupon the judgment of the supreme court was accordingly REVERSED. Judgment reversed.